May it please the Court, my name is Adam Watkins and I represent the Plaintiff Appellant in this matter. This case illustrates the central importance of the California Legislature's decision in the year 2000 to strengthen the FEHA beyond the strictures of the ADA, to statutorily require employers to engage in an interactive process with employees who request reasonable accommodation. Here, Cardinal flagrantly disregarded its statutory obligations, and once Mr. Galvez submitted the doctor's request for accommodation, Cardinal simply said no to the accommodation request, put him on a leave immediately, and summarily dismissed him when his disability insurance ran out. Now, separate and apart from this interactive process claim, there is a second set of claims, which are the failure to accommodate and the disability discrimination. Now, each of these claims basically comes down to one central issue, which is, is Mr. Galvez a qualified individual? In other words, is he able to perform the truly essential duties of this position with or without reasonable accommodation? Now, unpacking that statement, there's really three distinct issues. The first is, are the duties claimed by Cardinal to be essential truly essential? And, of course, we argue that they're not. The only documentary piece of evidence is the job description form that Cardinal itself prepared that has a specific section enumerating the essential duties and responsibilities of the position. And all three duties claimed by Cardinal to be essential are omitted from that section, despite the fact that it lists seven or eight other duties. The second issue is whether Mr. Galvez can perform these supposedly essential duties if, Your Honors, we're to find that they are, in fact, essential. As we explained in the brief, the restrictions that the doctor gave are not inconsistent with the duties that Cardinal claims are essential. And the third point is whether the accommodation that Mr. Galvez requested, together with other possible accommodations that are in the record that Cardinal never considered since it didn't engage in the interactive process, whether those accommodations are reasonable. And there's a number of court cases we've cited, as well as the FEHA itself, that provides a process for determining whether a proposed accommodation is reasonable. Now, all three of these issues, the district court simply ignored. It skipped over all three of these necessary issues and instead assumed incorrectly that Mr. Galvez was asking for a new position. And those new position cases are the only cases the district court cited. And as we noted in our brief, those new position cases simply don't provide much relevance here. Let me understand. The issue before us is whether there was reasonable accommodation within the contemplation of the California statute. Yes. Now, going through all of this, it seemed to me that the reasonable accommodation that your client wished to have was to work in one area and not to have to lift anything over 40 pounds. I would sort of partially agree with that, Your Honor. Okay. The accommodation he requested was working only in the Cajun Fault area. Okay. However, the record also contains a number of other possible accommodations that Cardinal did not consider and the district court did not consider. Moreover, the doctor's recommendations were not as simple as simply not lifting anything over 40 pounds. It's not lifting anything over 25 pounds on a regular basis. Okay. But the principal thing here we're talking about is working in that one area. I mean, I think it's important to look at the other possible accommodations as well. Yes. The Morton case just that was from this Court discusses the notion that district courts must look at not just the accommodations that were requested specifically by the employer, but any possible accommodations. And as I said, this record contains a number of other possible accommodations that were unconsidered by both Cardinal and the district court. And getting back to these new position cases, the reason that these – there's actually three reasons. Well, let me just ask you one further question then. Your client wanted to do this not on a temporary basis, but permanently. That's right. The restrictions were in effect. Permanently work in one area. Yes, yes. Although the doctor's restriction – the doctor's note contains two restrictions and one recommendation or suggestion. And that suggestion or the notion of not moving between different departments on a given day was merely a suggestion. It wasn't a restriction for the doctor's note. And furthermore, it was only within one day. It wasn't – it's consistent with the doctor's note to work in the Cajun vault one day and refrigeration in another, for example. And so the new position cases are simply not the appropriate lens through which to look at this case. All three of these cases, in them, the plaintiff either conceded from the outset that he could not perform the essential duties of the position, or it was determined at a bench trial after summary judgment by the judge that the plaintiff could not perform the essential duties. So only after that determination has been made did – and it was determined that the plaintiff could not perform his existing job, only then is the next step of this notion of a new position come out. And these are really an offshoot of the duty of an employer to find a different vacant position once an employee is no longer able to perform his current position. Spitzer is one of the cases that talks about that duty. That's simply not implicated here. Mr. Galvez has not sought a different position. He argues that he can perform the essential duties of the position, that Cardinal's allegations of these three particular duties, lifting more than 40 pounds, moving around, and performing overtime, he could perform them consistent with the doctor's note, and that, at any rate, the reasonable combination he requested and the ones that the district court and Cardinal failed to consider but are still on the record would have enabled him to perform those duties. The other reason the new position cases are not really on point is that each of those plaintiffs was seeking to create a hybrid position, something that combined the duties and responsibilities of a new position with the higher pay and benefits of an old position. And, again, that's simply not the case here. For example, in Rain, which is the leading case the district court talked about, this is the police officer who is no longer able to perform or to run and jump into the things that a police officer on the beat needs to do. Instead, it's working a desk job in the front desk, which is a job that's normally a civilian position. Once it became clear that his disability was permanent, he sought to retain his old police benefits while working the civilian position. The court referred to it as reclassification, and effectively combining two jobs. And it's the same in the Watkins case from this court and the same in the Lopez case. There's this sort of combining of jobs that just isn't part of the record here. And, again, the district court simply skipped to the step that's not relevant and ignored all of the case law and all of the steps that the FEHA itself mandates that it participate in in order to determine the reasonable accommodation and disability discrimination claims. On the essential duties issue, one thing that we highlighted in our 20HA letter and, of course, in the briefs as well, is the notion that the only piece of documentary evidence in this entire case on the issue of what duties are essential is the job employment form or job description form that Cardinal itself had prepared. That is the only piece, and it's a self-interested document produced by Cardinal, of course, before litigation. In that, there's a section entitled Essential Duties and Responsibilities. Cardinal's a large national corporation that presumably has access to legal counsel and a large HR department. That's a legal term of art, both for FEHA and for the ADA. And the fact that Cardinal chose not to include these duties that it now claims are essential in that section is strong evidence that it is not – these duties are not essential. I refer you to the Turner case from the Third Circuit, the Acevedo case that we cite in our 20HA letter, as well as the – sorry – the Reardon case from the Eastern District of California. Another important thing to consider in the essential duties realm is the notion from this Court's decision in Ackerman, and that is even – it's sort of a backstop argument for us – but even if this Court were inclined to find that the duties claimed by Cardinal to be essential actually were, we're talking about a large cadre of warehouse workers who are essentially fungible cogs in a wheel, more than 100 of them. If just one of these workers cannot perform a duty that is – even a duty that is admittedly essential for the workers as a group, it does not mean that this person is not a qualified individual. And that's what this Court found in Ackerman. And that actually springs directly from statutory language in the FEHA, which mandates that district courts consider the consequences of not requiring the incumbent to perform the position. In other words, if a district court examines what happens if this one person out of over 100 can't perform one duty, is that really going to have an effect? So that's what the Ackerman case does. And, again, that springs right from the FEHA language. And then, again, on the interactive process claim, there's – as we note in our brief, the district court simply cites one case which is not part of the majority rule, the not-off-broad road case, and ignores the clear conflict of the majority of courts who have to consider the issue. You're distinguishing the cases that are relied upon. But I don't hear any case that is like this, because here you have a job that seems to be cleaning a large area that involves lifting things and moving them and all the things that you have to do to clean. And your client says, well, I need to be reasonably accommodated so that I clean only a small area, one area, and I don't lift anything more than 25 pounds or something like that. And they said, well, nobody else who cleans does that. That's not this job. It's to clean the warehouse, not just to clean a corner. That does, in common sense, sound a little bit like creating a new job. So what is the case under California law? Because you've got – unusual, but you've got two Arizonans and a Nevada judge here. So what is the case in California law that says that they have to accommodate to that? I mean, I don't – Your Honor, to answer the point directly, I don't think that there's cases exactly like this. Well, I understand that. But what is the closest case that gives us some guidance here? I mean, I would think about the Morton case from this Court, that even though the facts are not the same, the notion that the reasonable accommodation that the district court needs to look at is all the possible accommodations. Here, there's really just a slight modification of the job, and it springs directly from the FEHA's language on part-time – I mean, for example, no California court has ever held overtime to be an essential duty under the FEHA, and the Cardinal's pointed to none. But it's – you know, like I said, unfortunately, there's not a case that's directly on point. But the key thing – it's not just a matter of distinguishing. These cases are simply not relevant, the new position cases, to what's going on. And the district court only looked at those. The district court did not engage in this analysis that needs to be made in order to find what it did. The – you know, that's really the key problem here. The other problem you have in the case is that Cardinal didn't engage, as you say, in the interactive process at all. He said, I'd like to do this. They said, you're gone. Absolutely, Your Honor. And I think that's an important point, and it does address Judge Schroeder's question, that really, in reality, because Cardinal shut off the process right at the outset, there wasn't the opportunity. The entire point of the FEHA – I mean, the central point from the Jensen case is to engage in the interactive process, and that's the method by which reasonable accommodations can be discovered. I mean, Cardinal has shown that they don't believe that that's important. They talk about it being a dubious fiction, that the interactive process will accomplish anything. Well, there's some conflict in California law regarding whether or not that interactive process is triggered in the absence of the existence of a reasonable accommodation. Yes, Your Honor. And the Weisinger case is the leading case that we cite. And, of course, the Nadov-Ravrov case is the only case the district court cites, wholly ignoring this conflict. I agree, Your Honor, there is a conflict. And I think Weisinger and Nadov-Ravrov are directly in opposition and can't be reconciled. But the fact is, the clear majority of cases, including this court, albeit an unpublished disposition in Timmins, has sided with the Weisinger and view that as the law of the land in California. Most of the district courts, the federal district courts in California, have sided with Weisinger. And the very few cases that Cardinal has cited otherwise generally make the same error as the district court. They've looked, basically, you know, the district court judge just wanted to be able to say, well, this is what the standard is, found a case, Nadov-Ravrov, and just wrote it in. There's no discussion of this split. And I also direct the court to the statutory arguments that we made that are largely unrebutted by Cardinal for why the Weisinger approach is the correct approach, that the structure of the statute of the FEHA, the language, the direct textual language, and also the legislative history that shows that the California legislature chose to amend in order to strengthen, among other things, to strengthen the interactive process requirement. But as a practical matter, why would we require an employer to gauge in a feudal process if there is no reasonable accommodation available and the parties agree that there is none? I'm not saying that's true in this case. But why would we compel the employer to engage in a feudal act? Well, Judge Rollinson, I think I have to disagree with the premise as applied to this case. There's – Well, but I said that. Okay. If the parties agree. If the parties concede that it's a feudal act, we still maintain that the FEHA requires the interactive process. So what should they have done? This is a – he comes to – he says – the doctor says he's not to lift more than 25 pounds. On a regular basis. And he just has to work in one department and not multiple. And no overtime. And no overtime. And the employer says we can't – and that's – this is his permanent disability, isn't it? And the employer says we can't – we can't accommodate to that. Now – and so he never – he never came back to work. And I'm not understanding what – What Cardinal should have done. What Cardinal should have done. Well, I see my time is up, so I will be quick. I mean, the very basic answer to start with is that Cardinal should have engaged him. That's the fundamental premise of the FEHA. That it needs to work with him. There are other – not just working the cage of a bulb only. There are notions of having somebody assist with helping, you know, particularly heavy duty – heavy items. And that's something that comes from the deposition of Ms. Gardner, a Cardinal employee, the HR representative, working in other areas. But the problem is, as this court has found in other cases, when there's Barnett, particularly on Banks' decision, when there's even a dispute as to whether the employer engaged in the interactive process, summary judgment plainly is not allowed because we don't know what they would have found. And the time to find that is not in litigation. The time to find that is before litigation, when the parties' incentives are aligned. Well, I'm just wondering, in this circumstance where he says this is all that I can do, that's what my doctor says this is all that I can do, and the employer says we can't operate that way. Well, the fact is they had been operating that, albeit on a temporary basis. Temporary basis. But with six people, and that's just in the cage of a bulb room alone. Okay. Thank you, Your Honor. Good morning. Lois Kosch from Wilson Turner Cosmo on behalf of Cardinal Health 110. I think I'd like to begin by addressing the issue of the interactive process claim, because I think we need to back up a step, because the plaintiff, in fact, never pled a cause of action for failure to engage in the interactive process, and so I don't even think they have that claim in this case. It's not specifically pled as a cause of action in the complaint, and the complaint is completely devoid. Was it argued on summary judgment? There was no argument. The district court opinion. No, no, there were papers. Yes. Yes. And actually, that's the first time that the claim came up. That's the first time that we realized that the plaintiff was even making a claim for failure to engage in the interactive process. And the district court largely glossed over the pleading issue and its decision and just went on to the point that there wasn't a reasonable accommodation, and therefore the plaintiff could not sustain a failure to engage in a cause of action. But I would just go back and remind this Court that the claim was not pled either in the complaint and even in the docketing statement for this appeal. It asked what are the claims being made, and the claims listed are disability discrimination and failure to accommodate. There's no mention of failure to engage claim. Let me ask you this. How does this work under this interactive process? How does this work? Did he ever, backing up another step, did the plaintiff ever ask for the employer to engage in a further interactive process? Was that his duty or was that the employer's duty? Well, there's a lot of important history here that we need to acknowledge because the plaintiff's approach is to only look at what happened from October 30th, 2006 to November 1st of 2006, when in fact Mr. Galvez had worked at this warehouse for three to three and a half years after his diagnosis, which, again, nobody was aware of exactly what his diagnosis was. And there was an ongoing discussion with him about various needs that he had. There were numerous accommodations provided to him over a three and a half year period, including numerous medical leaves of absence, numerous short-term periods of letting him work a reduced work schedule. There was a period of time where he had a lifting restriction that was accommodated by Cardinal. And there was an ongoing accommodation for him in terms of like an intermittent leave where he was allowed to call in sick as much as he want. He was allowed to leave early whenever he felt fatigued, whenever he felt the need. He could do these things without any reprimand under Cardinal's attendance control policy. And that was an ongoing accommodation for him. So he had very much latitude in terms of what he could do in order to keep working and maintain his health. And in August of 2006, he sat down with his supervisor and someone from Human Resources and said, I want two things. I want only to work in the Cajun vault, and I don't want to ever have to work overtime again. And there was a lengthy discussion about these two issues. And the fact that his supervisor was very sensitive to the fact that he preferred to work in the Cajun vault, and his supervisor explained to him that he would give him that assignment whenever he could, but the way the assignments are made depends on how the orders come in that day. And you may get enough orders for pharmaceuticals such that, you know, Mr. Galvez can be in Cajun vault, but there may be orders that come in from other departments that are heavy, and we put the workers in the departments where there is the most need that day. So his supervisor told him, I'll put you in Cajun vault as much as I can, but I can't promise that I'm never going to have to use you anywhere else or move you out of Cajun vault to help out in another department. And then they explained to him that, you know, they could not guarantee that they were never going to have to ask him to work overtime, but he did have this flexible ongoing accommodation where if he was not feeling well, he was allowed to leave early. And so these were the discussions that were ongoing. It was very clear to everyone what Mr. Galvez wanted. Everyone understood, and Mr. Galvez understood, that he wanted to work in Cajun vault, and he did not want to work overtime. So he took about a six-week leave of absence, and then when he came back to work, he had the doctor's note that asked for no overtime, no lifting over 25 pounds, and, you know, no moving around from department to department. And, you know, counsel is arguing, well, you know, the only, you know, there are more. Did he ask for that, or was it in effect saying this is the only way that he can be a permanent employee? This is the way that Mr. Galvez explained it to Cardinal Health at the time, was that these were permanent restrictions that would need to be accommodated for the duration of his employment at this warehouse. And so the combination of those three restrictions really meant that he was asking for a light-duty position. I mean, I don't think there's any other way to look at this. There's the warehouse worker position, and then there's Mr. Galvez saying, I can only do this subset of the warehouse worker position, and it's a light-duty assignment. And the law is very clear that an employer does not have to extend a permanent light-duty position in order to accommodate a disabled employee. What is the law? The law on that is the Rain case, which was mentioned by counsel, where there was an injured police officer who actually worked this desk job for six years as light-duty. But then when he became permanent and stationary, he wanted that position on an ongoing basis. And the police department said, we're sorry, we're not able to accommodate that. This is light-duty. We do need light-duty positions to put our disabled workers in. But then there's also the case of Watkins v. Ameripride, which was actually decided by this court. In fact, Justice Rawlinson wrote the opinion, which is very, very much like this case, where it involved somebody who was a delivery driver, manual labor, very much like the work that Mr. Galvez was doing. He had a wrist injury. His job required heavy lifting. As an accommodation for a certain period of time, his employer allowed him to do easier deliveries. That didn't involve delivering material that was as heavy. And then when it became clear that he was not going to get any better and could not resume his original functions, he said, I want this light-duty job. I want this easy delivery job made permanent. And the employer said, no, we can't do that. And the court was very clear in saying that it was not required to do that. The position of easy delivery driver or specials delivery driver did not exist. Just as in this case, we don't have a position where you're permanently assigned to Cajun Vault or any other department, are permanently excused from overtime, and are accommodated with a lifting restriction of 25 pounds or less, which is a pretty significant lifting restriction for a warehouse worker position. So Cardinal did not have that position at Mr. Galvez's level and was not obligated to create such a position. Counsel, what's your response to opposing counsel's argument that these were just statements that were made by the doctor and suggestions rather than restrictions or limitations? Well, I mean, initially I would say that when employers get these types of notes, I mean, they take them very, very seriously. And, I mean, they're not usually meant to be recommendations. But in the larger context of this case, given the ongoing discussions that the employer was having with Mr. Galvez, everybody knew what this note meant. In fact, I believe the HR representative testified in her deposition. When we saw the note, we were very familiar with these requests, because we had just met with Mr. Galvez about 60 days before and had a long discussion about these very issues. And so they knew what he wanted. And, again, that is another reason why I did not think that they can establish a failure to engage in the interactive process claim, because they did, in fact, engage in a very lengthy interactive process claim that actually spanned several months. And when they got the note, there really at that point was no need for any further discussion, because everybody knew what it was about. There was clarification needed in terms of are these temporary, in which case I think Cardinal would have seen what it could have done to accommodate them, because they had made other short-term accommodations for Mr. Galvez and other employees, as has been mentioned in the record. But, you know, the answer was no, this is permanent, these are my restrictions, these are my limitations. And, unfortunately, they did not have a position that could accommodate those restrictions and were not required by law to create one. I'm sorry, which is the Ninth Circuit case that you cited? Oh, the Ninth Circuit case is Watkins versus Ameripride. And I think that looking at the combination of restrictions, there's no other way to see this than a light-duty position. So I think that makes the decision in this case very clear. And I also just wanted to address the issue that counsel raised about the job description, because all of the requirements that we have talked about in this case, the lifting requirements, the overtime requirements, and the changing departments within the warehouse, they're all in the job description. There's been no evidence in the record that this job description was ever vetted by the Cardinal Health Legal Department. So, I mean, that's just argument at this point. But it does clearly say under knowledge, skills, and abilities that this position requires that you be able to safely and repetitively lift cases or tote boxes that can weigh up to 40 pounds and push or pull or haul carts weighing 200 to 1,000 pounds. And, again, the job description does say that the position requires overtime. So clearly there's a heavy emphasis in the job description on lifting and overtime, as both are mentioned more than once in the job description. There's also indicates that the position may need to work in various departments and not just one. And, I mean, there's further evidence beyond the job description if we want to be critical of that in the record of what this job entails. And first and foremost is Mr. Galvez's testimony about what the job was about, because he does acknowledge that part of the job is moving around to different departments. He does acknowledge in his testimony that lifting is required. I mean, and he did testify quite clearly that lifting up to 40 pounds is required, even in the Cajun vault. Counsel, why would you think that opposing counsel would argue that the new position cases do not apply? I'm a little bit dumbfounded by that. You know, I certainly think, you know, that Watkins and Rain are controlling in this particular case. I mean, Watkins in particular just seems so similar to our case that I don't think that those can be dismissed in any way. So I can't really make an argument as to why they wouldn't apply, because I think they are directly on point, and do apply and do provide the appropriate guidance for the Court in this matter. I understand your argument. You're saying that the interactive process was engaged in before he bought the doctor's note. I would say yes, that the interactive process was ongoing in this case, and that just when we got to the point where the doctor's note came in, it's like everything that could be said had already been said. And again, this is, you know, a situation where you have an individual who is at the lowest level in the warehouse and did not have really any transferable skills. So it's not a situation where there really are a lot of options to consider. And after discussion with Mr. Galvez about it, I mean, everybody was clear that what he wanted was to just work in the Cajun vault primarily. That's what he was trying to get. I also would just like to point out that I strongly disagree with counsel that the Weisinger case is the law of the land. There's nothing to support that. In fact, the most recent cases are the Nadov-Rayrott v. Neiman Marcus case and the Scotch v. Art Institute of California case, which both say that if the plaintiff cannot show that there was reasonable accommodation, then the plaintiff cannot sustain a cause of action for failure to engage in the interactive process. And I think this case shows why. The interactive process is supposed to be informal. It's not set by rigid standards. There were discussions with Mr. Galvez, and, you know, we're not supposed to have a pro forma discussion with him just to say that we did when we would have gotten to the same result. Now, here after litigation, still the only accommodation that they have come up with is, you know, I would just like the Court to acknowledge that Cardinal Health did accommodate Mr. Galvez in a number of different ways over the years, but when it came down to it with the restrictions that he had for his doctor's note, he was not a qualified individual, and therefore he cannot establish his disability discrimination cause of action. His failure to accommodate claim fails because Cardinal Health was not required to provide him with a life duty position or create a new position, and the failure to engage claim wasn't pled. But again, you know, even if it was, he still loses because there was no reasonable accommodation available. Thank you. Kagan. Thank you. Are there any other questions? Thank you. Thank you. The case just argued. Does he have time? Is there time remaining? No. It was used. Are there any further questions? No. All right.
judges: Collins, Schroeder, Rawlinson